IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF ARKANSAS
DELTA DIVISION

MICHAEL L. BOYD                                                              PLAINTIFF
ADC # 115890

v.                                            2:23CV00050-JTK

LAY, et al.                                                                 DEFENDANTS

## ORDER

Michael L. Boyd ("Plaintiff") is incarcerated at the East Arkansas Regional Unit of the Arkansas Division of Correction ("ADC"). Plaintiff sued multiple Defendants alleging violations of his constitutional rights. (Doc. No. 2). Plaintiff's claims against Defendants Lay, Payne, and Well Path Corporation have been dismissed, as have Plaintiff's official capacity claims and retaliation claims. (Doc. Nos. 6, 15). Plaintiff's deliberate indifference to serious medical needs claims against Defendants Tracy Bennett, Angela Douglas, and Angela Mixon (collectively, "Defendants") remain pending.

Defendants filed a Motion for Summary Judgment on the merits of Plaintiff's claim, Brief in Support, and Statement of Facts. (Doc. Nos. 107-109).

On March 25, 2024, the Court directed Plaintiff to respond to Defendants' Motion within thirty (30) days, or by April 24, 2024. (Doc. No. 111). The Court advised Plaintiff that failure to comply with the Order would result in all of the facts set forth in Defendants' summary judgment papers being deemed admitted, or the dismissal of the action without prejudice for failure to prosecute. (Id.). The Court extended the deadline by which Plaintiff must file his Response to May 13, 2024. (Doc. No. 114).

Plaintiff has responded and Defendants have replied. (Doc. Nos. 125, 126, and 131, respectively).

After careful consideration of the record before me, and for the reasons explained below, Defendants' Motion (Doc. No. 107) is GRANTED.[1]

## I. Plaintiff's Complaint

Plaintiff, a convicted inmate, filed this § 1983 lawsuit against Defendants in their personal and official capacities. (Doc. No. 2 at 1-2).

According to Plaintiff, Defendants Bennett and Douglas were deliberately indifferent to his serious medical needs in 2022. (Id. at 7, 8). Plaintiff had been in the hospital and had an "ileostomy pouch." (Id. at 7). On August 24, Defendant Douglas "took the ileostomy pouch and toilet paper"; Defendants Bennett and Douglas took the supplies the hospital had given Plaintiff to stop infection and leaks. (Id. at 7, 8). Plaintiff had only "10-4x4" to catch the waste. (Id.). As a result, Plaintiff suffered from an infection, irritation, and pain. (Id.).

On September 4, 2022, Defendant Mixon allegedly told Plaintiff during a sick call visit that Plaintiff "could not have any ileostomy supplies." (Doc. No. 2 at 9). Plaintiff claims this denial was deliberate indifference to his serious medical needs. (Doc. No. 2 at 9).

Plaintiff seeks declaratory relief and damages. (Id. at 11).

## II. Summary Judgment Standard

Pursuant to Rule 56(a) of the Federal Rules of Civil Procedure, summary judgment is appropriate if the record shows that there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. See Dulany v. Carnahan, 132 F.3d 1234, 1237 (8th Cir. 1997). "The moving party bears the initial burden of identifying 'those portions of the

---

[1] The parties consented to the jurisdiction of a United States Magistrate Judge to conduct all proceedings and order the entry of a final judgment. (Doc. Nos. 47, 55).

pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, which it believes demonstrate the absence of a genuine issue of material fact.'" Webb v. Lawrence County, 144 F.3d 1131, 1134 (8th Cir. 1998) (quoting Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986) (other citations omitted)). "Once the moving party has met this burden, the non-moving party cannot simply rest on mere denials or allegations in the pleadings; rather, the non-movant 'must set forth specific facts showing that there is a genuine issue for trial.'" Id. at 1135. Although the facts are viewed in a light most favorable to the non-moving party, "in order to defeat a motion for summary judgment, the non-movant cannot simply create a factual dispute; rather, there must be a genuine dispute over those facts that could actually affect the outcome of the lawsuit." Id.

In addition, "[a]ll material facts set forth in the statement (of undisputed material facts) filed by the moving party...shall be deemed admitted unless controverted by the statement filed by the non-moving party . . . ." Local Rule 56.1, Rules of the United States District Court for the Eastern and Western Districts of Arkansas. Failure to properly support or address the moving party's assertion of fact can result in the fact considered as undisputed for purposes of the motion. FED. R. CIV. P. 56(e).

**III.   Facts and Analysis**

The Eighth Amendment prohibits cruel and unusual punishment. U.S. CONST. AMEND. VIII. This prohibition gives rise to the government's duty to provide medical care to prisoners. "The government has an 'obligation to provide medical care for those whom it is punishing by incarceration." Allard v. Baldwin, 779 F.3d 768, 772 (8th Cir. 2015) (citing Estelle v. Gamble, 429 U.S. 97, 103 (1976)). It follows that the "Eighth Amendment proscribes deliberate indifference to the serious medical needs of prisoners." Robinson v. Hager, 292 F.3d 560, 563

3

(8th Cir. 2002) (internal citation omitted). "A serious medical need is 'one that has been diagnosed by a physician as requiring treatment, or one that is so obvious that even a layperson would easily recognize the necessity for a doctor's attention.'" Schuab v. VonWald, 638 F.3d 905, 914 (8th Cir. 2011) (internal citation omitted). "Deliberate indifference may be demonstrated by prison guards who intentionally deny or delay access to medical care or intentionally interfere with prescribed treatment, or by prison doctors who fail to respond to prisoner's serious medical needs." Dulany v. Carnahan, 132 F.3d 1234, 1239 (8th Cir. 1997). To succeed on a claim of deliberate indifference to a medical need, a plaintiff must show he had an objectively serious medical need and prison officials had actual knowledge of, but deliberately disregarded, that need. See Washington v. Denney, 900 F.3d 549, 559 (8th Cir. 2018); McRaven v. Sanders, 577 F.3d 974, 981 (8th 2009).

### A.     Defendants' Statement of Facts

On May 19, 2022, Plaintiff underwent treatment for a rectal tubular adenoma. Patrick Szeto, M.D. performed a total colectomy and an ileostomy. (Doc. No. 109 at ¶ 1).

On May 27, Plaintiff was seen by Tracy Bennett, APN. (Doc. No. 109-2). Defendant Bennett examined Plaintiff and noted that the area surrounding his ileostomy was beefy red; he had a small amount of liquid stool in the ostomy bag. (Id. at 1). Defendant Bennett educated Plaintiff on using the ostomy supplies. Defendant Bennett ordered ostomy care and supplies to be provided at treatment call. (Id. at 3). The medical records noted that Plaintiff was scheduled for a surgical follow up in June. (Id.). The order for ostomy care and supplies was valid for 365 days. (Id. at 2).

On June 1, Plaintiff presented to Health Services complaining that his ostomy was leaking. (Doc. No. 109-3 at 1). An individual who is not a party to this action noted that

Plaintiff's stoma was pink and moist. The provider applied ostomy supplies, which Plaintiff tolerated well. (Id.). Defendant Bennett ordered Fiberlax for Plaintiff. (Id. at 6).

On June 7, Plaintiff presented to Health Services for ostomy supplies. (Doc. No. 109-4). An individual who is not a party to this lawsuit provided Plaintiff with supplies. (Id.).

On June 8, Plaintiff was seen for a follow-up visit with Dr. Szeto. (Doc. No. 109-5). Dr. Szeto noted that Plaintiff was doing well with no acute issues and the ostomy was functioning properly. (Id. at 1). Upon his return to the ADC, Plaintiff was assessed by an individual who is not a party to this lawsuit. (Doc. No. 109-6). Plaintiff was provided with ostomy supplies, including rings to reduce the chance of leakage. (Id. at 3).

On June 10 and June 11, Plaintiff was provided ostomy supplies by individuals who are not parties to this lawsuit. (Doc. Nos. 109-7; 109-8). Plaintiff voiced no new concerns to either individual. (Id.). On June 11, Plaintiff was educated not change the wafer daily. (Doc. No. 109-8).

On June 13, an individual who is not a party to this lawsuit provided Plaintiff ostomy supplies. (Doc. No. 109-9). Plaintiff voiced no new concerns at this time; he was again instructed to not change the wafer daily. (Id.).

On June 15, an individual who is not a party to this lawsuit provided Plaintiff ostomy supplies. (Doc. No. 109-10).

On June 20, Defendant Bennett saw Plaintiff for a follow-up visit. (Doc. No. 109-11). The record notes that Plaintiff was seen "on 06/09/22 by gen surg at CHI St. Vincent for ileostomy encounter." (Id. at 2, 3). During Plaintiff's encounter with Defendant Bennett, liquid stool was noted in Plaintiff's ileostomy pouch. (Id. at 1, 2). Defendant Bennett discussed Dr. Szeto's consult and implemented Dr. Szeto's recommendations for oral fluids and electrolytes

with pouch change. (Id. at 3). Defendant Bennett encouraged Plaintiff to keep a food diary to record foods that are not well tolerated. (Id.).

On June 23, Defendant Mixon provided Plaintiff ostomy supplies. (Doc. No. 109-12 at 6). In addition, Plaintiff was provided ostomy supplies at treatment call by an individual who is not a party to this lawsuit. (Id. at 1). The following day, an individual who is not a party to this lawsuit provided Plaintiff ostomy supplies. (Doc. No. 109-13). That same individual provided Plaintiff ostomy supplies again on June 29. (Doc. No. 109-14).

On July 3, Plaintiff was provided ostomy supplies by an individual who is not a party to this lawsuit. (Doc. No. 109-15).

On July 6, Plaintiff returned to Health Services with complaints of abdominal pain. (Doc. No. 109-16). An individual who is not a party to this lawsuit changed Plaintiff's ostomy bag without complications. (Id. at 3). The provider noted that the wafer and dressing were not soiled and noted no signs of leakage. (Id.).

On July 10 and 13, Plaintiff was provided ostomy supplies by individuals who are not parties to this lawsuit. (Doc. Nos. 109-17, 109-18). On July 10, Plaintiff was provided 2 wafers, 2 colostomy bags, and 2 disposal bags. (Doc. No. 109-17 at 2). On July 13, Plaintiff was given 2 wafers, 2 colostomy bags, and 2 disposal bags. (Doc. No. 109-18 at 2).

Defendant Bennett saw Plaintiff for a follow up visit on July 15. (Doc. No. 109-19). Plaintiff reported increased output when he does not take Fiberlax twice a day. (Id. at 1). Defendant Bennett noted that the ileostomy was intact with a small amount of liquid stool in bag. (Id. at 2). Defendant Bennett renewed Plaintiff's Fiberlax prescription and again encouraged him to keep a food diary. (Id. at 3).

Plaintiff was provided ostomy supplies on July 17, 19, 21, and 23 by individuals who are not parties to this action. (Doc. Nos. 109-20, 109-21, 109-22, 109-23).

On July 25, Plaintiff returned to Health Services with complaints of abdominal pain and leaking of his ostomy bag. (Doc. No. 109-24). An individual who is not a party to this lawsuit examined Plaintiff and noted that his abdomen was soft, nontender with no lumps, bumps or masses. (Id. at 2). The provider ordered Tylenol and naproxen for pain management. (Id. at 3). Plaintiff was educated on the proper use of the ostomy wafer. (Doc. No. 109-25 at 2). That same day Plaintiff was provided with additional ostomy supplies. (Doc. No. 109-26).

On July 26, Defendant Bennett requested a consult for Plaintiff's proctectomy with j pouch formation. (Doc. No. 109-27).

On July 28 and July 31, Plaintiff was provided ostomy supplies by individuals who are not parties to this action. (Doc. Nos. 109-28, 109-29). On July 31, Plaintiff was given 2 wafers, 2 bags, and 2 "gray bags." (Doc. No. 109-29 at 3). The provider noted "This IM should not need any supplies for a few days." (Id.).

On August 2, Plaintiff returned to Health Services with complaints of abdominal pain. (Doc. No. 109-30). Defendant Bennett educated Plaintiff regarding his medical condition and renewed his Tylenol prescription. (Id. at 3).

On August 4, Plaintiff underwent a proctectomy with j pouch formation at an outside hospital. (Doc. No. 109-31). He returned to the EARU on August 10. (Doc. No. 109-32). That same day, an individual who is not a party to this action cleaned and changed Plaintiff's ostomy bag without complications. (Id. at 5). Defendant Douglas updated Plaintiff's supply order to allow him to receive supplies weekly. (Id. at 2).

On August 11, Defendant Bennett implemented the recommendations from Dr. Szeto, including a follow-up consult and restrictions. (Doc. No. 109-33). That same day, Plaintiff returned to Health Serviced with complaints of leaking. (Doc. No. 109-34). An individual who is not a party to this lawsuit provided Plaintiff with an ostomy bag, a wafer and tape. (Id. at 2).

On August 12, Defendant Douglas provided Plaintiff the ostomy supplies: 3 pre-cut wafers and 4 colostomy bags. (Doc. No. 109-35). Plaintiff's script was "updated to receive 2 wafers and 2 colostomy bags every Monday . . . ." (Id. at 1).

On August 16, Plaintiff returned to Health Services with complaints of ostomy leakage and rectal pain. (Doc. No. 109-36). Defendant Bennett examined Plaintiff and noted a small amount of liquid stool but no leakage. (Id. at 2). As a precaution, Defendant Bennett reinforced the wafer with hypofix. (Id.). A rectal exam identified no problems. (Id.). Defendant Bennett refilled Plaintiff's Fiberlax prescription. (Id. at 3). Plaintiff was provided medical tape to help secure his ostomy bag. (Doc. No. 109-37).

On August 17, Plaintiff presented to Health Services to assess his grievance regarding ostomy supplies. (Doc. No. 109-38). Plaintiff presented with no wafer or bag covering his stoma. (Id. at 2). Defendant Douglas examined Plaintiff and noted no feces or bleeding with ostomy site being raw, beefy and red. (Id.). The individual cleaned the area and applied a skin barrier and new wafer and bag. (Id.).

On August 20, Plaintiff returned to Health Services without any wafer or bag to his stoma. (Doc. No. 109-39). An individual who is not a party to this lawsuit examined Plaintiff and noted no feces or bleeding with ostomy site being raw, beefy and red. (Id. at 2). The individual cleaned the area and applied a skin barrier and new wafer and bag; she also provided ostomy supplies. (Id.).

8

On August 21, Plaintiff was provided ostomy supplies by an induvial who is not a party to this lawsuit. (Doc. No. 109-40).

On August 22, Plaintiff returned to Health Services without any wafer or bag to his stoma. (Doc. No. 109-41 at 2). An individual who is not a party to this lawsuit examined Plaintiff and noted the stoma to be beefy and red. (Id.). The individual provided Plaintiff ostomy supplies. (Id. at 4). Plaintiff later returned to Health Services complaining that his ostomy was leaking. (Doc. No. 109-42). An individual who is not a party to this lawsuit provided Plaintiff ostomy supplies—3 wafers and 3 bags. (Id. at 2).

On August 24, 2022, Plaintiff was placed in the Infirmary for treatment and monitoring of stoma care, medication application and compliance. (Doc. No. 109-43). During this period, ostomy appliances were removed to allow excoriated skin to heal. 4x4 gauzes, a boil bag and zinc oxide were provided. (Id. at 2). Plaintiff was not allowed toilet paper due to irritation and flushable wipes were provided. (Id. at 3).

On August 25, 2022, Plaintiff, who was still in the infirmary, complained of running out of wet wipes. (Id. at 5). An individual who is not a party to this action instructed that Plaintiff "is to be micro managed due to excessive use of wet wipes." (Id.). Plaintiff was given a "handful of gauze to use as tissue paper" and was to be "give[n] gauze as needed." (Id.). Plaintiff was given "another handful of gauze at 6:48." (Doc. No. 109-43 at 5). Plaintiff remained in the infirmary.

On August 26, Plaintiff was found sitting on his bed with no clothing and soiled clothing and blankets on the floor. (Id. at 9). Plaintiff complained that he soiled his clothing and that "'they are not giving me anything.'" (Id.). Plaintiff also complained that he did not authorize being kept in the infirmary. (Id.). An individual who is not a party to this lawsuit ordered a

shower and an ostomy wafer and bag.  (Doc. No. 109-44 at 1-2).  The provider authorized Plaintiff's return to the barracks.  (Id. at 2).  Plaintiff was given one new wafer and bag, and one extra bag.  (Id.).

On August 27, 28, 31, and September 2 and 3, Plaintiff was provided ostomy supplies by individuals who are not parties to this lawsuit.  (Doc. Nos. 109-45, 109-46, 109-47, 109-48, 109-49).

On September 2, 2022 at approximately 9:30 p.m., Plaintiff was given 2 wafers and 2 colostomy bags.  (Doc. No. 109-48).  Plaintiff, in the health services office, washed, dried, and applied a new wafer and bag, and applied tape around the wafer to secure it.  (Id. at 2).

On the morning of September 3, Plaintiff presented to Health Services with complaints that his ostomy was leaking. (Doc. No. 109-49).  Plaintiff was "arguing and yelling" about needing supplies and said the supplies he received the night before were "no good an ha[d] fallen off"; Plaintiff was given additional supplies.  (Id. at 1, 2).  An individual who is not a party to this action cleaned the stoma area, applied a new wafer and educated Plaintiff on care.  (Doc. No. 109-50 at 3).

On September 4, Plaintiff complained of needing ostomy supplies, despite having received supplies that morning.  (Doc. No. 109-51).  Defendant Douglas educated Plaintiff on his condition and referred Plaintiff to the provider for complaints of skin irritation.  (Id. at 4).

Defendant Bennett saw Plaintiff on September 6.   (Doc. No. 109-52).  Defendant Bennett educated Plaintiff regarding his medical condition and informed him of a follow-up with his surgeon.  (Id. at 3).

On September 7, 8, and 9 Plaintiff was provided ostomy supplies by individuals who are not parties to this lawsuit.  (Doc. Nos. 109-53, 109-54, 109-55).  The September 9, 2022 record

10

notes that Plaintiff's ostomy measured at 44 mm, but that Plaintiff wanted the wafer cut at 38 mm. (Doc. No. 109-55 at 2).

On September 9, an individual who is not a party to this lawsuit instructed Plaintiff to return his used supplies and educated him on care. (Doc. No. 109-56 at 2). The record reveals that Plaintiff cut his wafer to 36 mm. (Id.). The record also reveals that while Plaintiff had "already been down this same day and received a wafer and bag," Plaintiff was given another wafer and bag. (Id.). For that reason, Plaintiff was instructed to bring his old supplies to the infirmary with him. (Id.).

On September 10, 11, and 12, Plaintiff was provided ostomy supplies by individuals who are not parties to this lawsuit. (Doc. Nos. 109-57, 109-58, 109-59). On September 10 and 11, Plaintiff removed his wafer before going to the health services office and did not bring his used supplies with him. (Doc. Nos. 109-57, 109-58).

On September 13, an individual who is not a party to this lawsuit provided Plaintiff ostomy supplies and educated Plaintiff on ostomy care and use of supplies, including a wafer Plaintiff insisted by cut to 38 mm. (Doc. No. 109-60). The next day, this individual again provided Plaintiff ostomy supplies after he presented with his wafer and bag already removed. (Doc. No. 109-61 at 2). Plaintiff secured the wafer with clear medical tape. (Id.).

On September 14, Plaintiff was seen by Dr. Szeto for a follow-up visit. (Doc. No. 109-62). Defendant Bennett discussed Plaintiff's ostomy with Dr. Szeto's nurse. (Id. at 1).

On September 15, Plaintiff was seen by a provider who is not a party to this lawsuit. (Doc. No. 109-63). The provider noted that Plaintiff had a bag/wafer/CeraRing covering his stoma and no leaking was observed. (Id. at 2). The provider counseled Plaintiff on the use of

ostomy supplies and instructed Plaintiff that each CeraRing should last 3 days at a minimum. (Id. at 4). The provider also scheduled Plaintiff for a follow-up visit with Dr. Szeto. (Id. at 5).

On September 17, 19, 20, 21, 22, 24, 26, 29, and 30, Plaintiff was provided ostomy supplies by individuals who are not parties to this action. (Doc. Nos. 109-64, 109-65, 109-66, 109-67, 109-68, 109-69, 109-70, 109-71, 109-72, 109-73).

On October 1, 3, 5, and 8, Plaintiff was provided ostomy supplies by individuals who are not parties to this action. (Doc. Nos. 109-74, 109-75, 109-76, 109-77).

On the afternoon of October 8, Plaintiff was examined by Defendant Douglas. (Doc. No. 109-77 at 4). Defendant Douglas cleaned the stoma area and provided ostomy supplies. (Id. at 5).

On October 9, 11, 15, and 17, Plaintiff was provided ostomy supplies by individuals who are not parties to this action. (Doc. Nos. 109-78, 109-79, 109-80, 109-81, 109-82). The record from October 17, 2022 notes that "stoma measures 41 mm but pt cuts wafer at 38 mm against this nurse's advice." (Doc. No. 109-82 at 2).

On October 20, 2022, Plaintiff underwent an ileostomy closure without complications. (Doc. No. 109-83). Plaintiff returned to the EARU on October 25. (Doc. No. 109-84). An individual who is not a party to this lawsuit ordered tramadol, loperamide, Fiberlax, Tylenol and zinc oxide. (Id. at 4).

      B.     **Plaintiff's Response**

Plaintiff contests many of the facts presented by Defendants. (Doc. No. 125). Much of the reason for Plaintiff's disagreement with Defendants' facts was that Plaintiff says he was not given a barrier ring, only a wafer. (Doc. Nos. 125, 126). Plaintiff asserts the result was that his ostomy leaked. (Id.).

### C. No Remaining Material Facts in Dispute

Plaintiff's claims in this case are limited to August and September, 2022. The Court has reviewed the medical records submitted by Defendants in support of their Motion. The records indicate that Plaintiff regularly received ostomy supplies—sometimes twice a day—and education about how to use the supplies and care for his condition. Plaintiff received care from Defendants—along with an outside provider and numerous other providers at the ADC. Plaintiff does not contest the authenticity of the medical records.

Plaintiff specifically complained that his toilet paper was taken. It appears this is correct: Plaintiff's toilet paper was taken when he was in the infirmary from August 24-26 due to irritation. (Doc. No. 109-43 at 1-9). As evidenced by the medical records, Plaintiff was given flushable wipes in place of toilet paper. (Id. at 2, 3). And Plaintiff was housed "on ward in isolation for treatment and monitoring of stoma care . . . ." (Id. at 5). Plaintiff is also correct that, in the evening of August 25, 2022, he was given gauze in lieu of toilet paper. (Id. at 5). That was because Plaintiff could not use toilet paper due to irritation and because he used an entire box of wet wipes within roughly 24 hours. (Id. at 1, 5). Notably, the individual that restricted Plaintiff to having gauze is not a party to this lawsuit.

In support of their Motion, Defendants submitted the Affidavit of Nicholas Gowen, M.D., FACP. (Doc. No. 109-1). Dr. Gowen is a hospitalist at the Central Arkansas Veterans Healthcare Administration and an Assistant Professor of Medicine at the University of Arkansas for Medical Sciences. (Id. at ¶ 2). As mentioned above, Plaintiff insisted on trimming his wafer to 38 mm. According to Dr. Gowen, 41 mm as recommended by Plaintiff's providers was the correct size for the wafer. (Id. at ¶ 10). Also according to Dr. Gowen, "[t]he additional trimming caused an ill-fit between the wafer and the waste pouch which likely caused irritation

13

and leaking." (Id.). Further, Plaintiff was provided with appropriate supplies to manage his condition, including gauze and flushable wipes. (Id. at ¶ 11). Dr. Gowen explained that gauze is preferable to toilet paper when there is irritation; by withholding toilet paper "they were able to stop him from accidentally damages his skin through overaggressive wiping." (Id.). In Dr. Gowen's opinion, the care that Defendants provided to Plaintiff were "appropriate, adequate, and timely" and Plaintiff's noncompliance "would have contributed to any skin irritation or leakage that he experienced." (Doc. No. 109-1 at ¶ 12).

In support of their Reply, Defendants submitted a further Affidavit of Nicholas Gowen. (Doc. No. 131-1). Dr. Gowen explains that Plaintiff's ostomy system consisted of a waste pouch and skin barrier that is also referred to as a wafer. (Id. at ¶ 3). Dr. Gowen further explains that a wafer and the skin barrier are two different names for the same device. (Id.). According to Dr. Gowen, some patients use an addition barrier cream or barrier ring, which are optional devices. (Id. at ¶ 4). Medical staff attempted to use barrier rings to improve Plaintiff's condition, but the rings were ineffective in part because Plaintiff was non-compliant with leaving the pouch in place and properly trimming the wafer. (Id. at ¶ 5). (See also Doc. Nos. 109-6, 109-63, 109-65, 109-67, and 109-79, among others).

As mentioned above, Plaintiff controverted many of the uncontested facts offered by Defendants. (Doc. No. 125). Plaintiff did not, however, support his factual position as required by Federal Rule of Civil Procedure 56(c)(1). Rather, Plaintiff often simply wrote that he disagreed with the fact. (Id. at ¶ 25, 26, among others).

Plaintiff did not contest the authenticity of the medical records.

Plaintiff also presented no medical evidence that establishes the leaking he suffered was the result of the deliberate indifference of Defendants. And the Court notes that records reflect

14

Plaintiff did, at least at times, have a CeraRing.  While Plaintiff may have preferred a different type, or additional type, of skin barrier, he has no right to his preferred course of treatment.  Barr v. Pearson, 909 F.3d 919, 921 (8th Cir. 2018).

After carefully reviewing the record, the Court does not find a dispute of material facts that would make summary judgment inappropriate.  On the record as it stands, no reasonable jury could find that Defendants were deliberately indifferent to Plaintiff's serious medical needs.

Where, as here, Defendants have moved for summary judgment, Plaintiff "was required 'to discard the shielding cloak of formal allegations and meet proof with proof by showing a genuine issue as to a material fact.'"  Fatemi v. White, 775 F.3d 1022, 1046 (8th Cir. 2015) (internal citation omitted).  Plaintiff has not, however, met proof with proof to establish facts in dispute that would preclude partial summary judgment in Defendants' favor.  Wilson v. Miller, 821 F.3d 963, 970 (8th Cir. 2016) (allegations must be substantiated with sufficient probative evidence); Bolderson v. City of Wentzville, Missouri, 840 F.3d 982, 986-87 (8th Cir. 2016) (noting plaintiff's duty to meet proof with proof in affirming summary judgment in defendant's favor).  Accordingly, Defendants' Motion will be granted.

### IV.   Conclusion

IT IS, THEREFORE, ORDERED that:

1. Defendants' Motion for Summary Judgment (Doc. No. 107) is GRANTED;

2. Plaintiff's Motion for Preliminary Injunction (Doc. No. 103) is DENIED as moot;

3. Plaintiff's claims against Defendants are DISMISSED with prejudice; and

4. This case is DISMISSED.

Dated this 31st day of May, 2024.

_____
JEROME T. KEARNEY
UNITED STATES MAGISTRATE JUDGE